Mr. Justice Thacher
delivered the opinion of the court.
Mitchell filed his bill in the district chancery court to subject certain slaves, the separate property of Mrs. Minerva Doty, to the payment of two bills single, executed by Mrs. Doty and her husband, jointly, and bearing date the 31st December, 1841, and the 11th day of January, 1842. The bill of complaint charges these bills single to have been executed for the payment of the rent of a tract of land, the hire of certain slaves, and the purchase-money of a quantity of com and fodder consumed *444 upon the plantation of Doty and wife, which contracts were made and completed solely on the credit of the separate estate, and at the solicitation of Mrs. Doty. • The bill also charges the insolvency of the husband.
The separate property of the wife, acquired under the will of her father, was secured to her by a marriage settlement, which bears date the 7th day of June, 1828. This settlement preserved to Mrs. Doty the enjoyment of the rents, issues and profits of the separate estate, to be disposed of at her will and pleasure, so as not to be under the control and disposal of the husband, or in any way liable to his contracts, debts or engagements ; and it also embodied a provision, empowering her by deeds in writing, executed in the presence of two or more credible witnesses, to alter and revoke any of the trusts contained in the instrument of marriage settlement, and to create, limit, or appoint any new or other trusts concerning the same, or so much thereof as a revocation should be made.
The bills single, for the payment of which the slaves were sought to be subjected, were not executed in the presence of any witness, and they contain a guaranty of their payment, made by Lemuel Doty.
Mrs. Minerva Doty answered the bill of complaint, positively denying that the contracts charged in the bill were made at her solicitation, or, so far as she was concerned, upon the credit of her separate estate ; and alleging that she acted in the premises upon the representations of her husband, without ever intending to pledge, or in any manner bind her separate estate, and concluded by a demurrer to the complainant’s prayer for relief.
Lott S. Humphrey, the trustee in the marriage settlement, and a party defendant to the bill, filed his answer and demurrer.
The only proof taken was contained in the deposition of Lemuel Doty. He testified to the hiring of the slaves by Doty, the husband, and the purchase of the corn and fodder; that the contracts were made by the husband, in the absence of the wife, and that her name was used as principal in the bills single, for the purpose of rendering her separate property liable; *445 that the contracts were not necessary for the support of Doty and wife, but were made as speculations; that at the request of the husband, he conferred with Mrs. Doty on the subject of her joining in the bills single, and that she expressed her willingness to assist her husband in any way she could. Lemuel Doty also proved a copy of a letter of attorney from Mrs. Doty to himself, in which, in consideration of his undertaking to become her indorser in contracts with Mitchell for the rent of land, hire of slaves, and the purchase of a stock of provisions, she constituted him her agent, with full powers, to control the land and slaves obtained from Mitchell, together with her own slaves, and to dispose of the crop and stock of the plantation, and apply the proceeds in payment of debts incurred in cultivating and gathering the crop; and in which she also engaged to pay any amount of debts that might remain unpaid after the proceeds of the stock and crop should have been exhausted. This letter of attorney was not executed in the presence of witnesses. No exceptions were taken in the chancery court to the competency of Lemuel Doty as a witness, on the score of his interest in the judgment arising from the circumstance of his having given his guaranty for the payment of the bills single.
It has already been intimated, in Berry v. Bland, 7 S. & M. 83, to be the opinion of this court, that it seems at this day to be settled, that a feme covert is not liable personally for any debt, and that her separate property in general is not liable in equity for the payment of her general debts or her general personal engagements ; but that the fact that a debt has been contracted during the coverture, either as a principal or as a surety for her husband, or jointly with him, is ordinarily to be held prima facie evidence to charge her separate estate, without any proof of a positive agreement or intention to do so. This opinion does not decide the question, whether a married woman acts in all respects unlimitedly as to her separate estate as a feme sole, for it will be seen from the case of James v. Fisk et al., 9 S. & M. 151, that the question was deemed still undetermined. It is only a decision as to the question of intention, and not of power.
*446 In the case before us, however, a positive intention is charged in the bill to have existed on the part of the wife, and an issue of law and fact is made by the demurrer and answer upon that charge. Any such intention is denied by the wife as positively as it is charged. The evidence of Lemuel Doty, taken in behalf of the complainant in the bill, is relied upon to support the allegation of intention. He testifies that Doty, the husband, was in fact the principal in the contracts, and that they were made in the absence of Mrs. Doty. He adds that the husband was desirous of securing Mitchell, and that the idea of involving Mrs. Doty’s separate property, was first conceived between Mitchell and the husband. He also testifies, that when, at the request of the husband, he approached Mrs. Doty relative to her joining her husband in the notes, her reply was simply an expression of her willingness to assist her husband m any way she could. Thus far this evidence elucidates that the debt created was the effect of a speculation of the husband ; that Mrs. Doty’s share in it was procured at the instigation, and through the influence of her husband, and that the lien, if any had been obtained upon her separate estate, was procured by a combination between Mitchell and the husband. This state of things raises two serious points of inquiry ; first, whether any intention existed on the part of Mrs. Doty to bind her separate estate and secondly, if so, whether her consent was not procured fraudulently by the conspiracy of Mitchell and the husband.
The letter of attorney from Mrs. Doty to Lemuel Doty, which has been before described, invested Doty with no powers except over the crop and stock of the plantation. It concludes with a bare obligation on her part to pay the balance of any debt remaining unpaid. The consideration of the letter of attorney was the engagement of Lemuel Doty to become her indorser upon the contracts with Mitchell. The circumstance of her requiring the indorsement of Lemuel Doty, shows at least that, as between Mitchell and herself, there was no design to pledge or involve her separate estate, and her obligation to pay debts remaining unpaid, is given without any reference either to the separate estate itself or its annual proceeds.
*447 Bnt at last this case presents those points, so often considered, whether a married woman is, as to her separate estate, a feme sole, or whether she has no powers but those conferred upon her by the instrument under which she claims. The English authorities, as has been frequently observed, are not well agreed upon these points, and no fixed rule can be deduced from them. In this country, the reported cases seem to hold that equity has so far changed the common law rule, that a married woman has no property or powers, as to relieve her from the rule so far as she stipulates for exception; but it confers upon her no powers beyond those given by the marriage settlement, or other conveyance in her behalf. From this doctrine, it follows that a married woman, as to her separate estate, is a feme sole only so far as the instrument conferring the separate estate constitutes her di feme sole, and that, in the disposition of such estate, the married woman is restricted to the particular mode or manner pointed out by the instrument conferring that estate. These points have been elaborately investigated and clearly determined in the case of Morgan v. Elam, 4 Yerger, 375, which case collects and weighs most of the authorities. We are inclined to accept the conclusions to be found in this case as most consonant to the true rules to be arrived at from all the cases, especially where they seem to have anticipated the policy which has since been engrafted into the legislature of this state.
With this view of the law bearing upon the case, it is perhaps unnecessary to enter into a train of reasoning to show, that, even if it were the intention of Mrs. Doty to bind her separate estate in the participation she took with her husband in the contracts with Mitchell, she has failed to proceed, or rather that Mitchell has failed to show, that she has proceeded to that end in the mode pointed out by her marriage settlement. From what has already been said in the course of this opinion upon other points, this will be sufficiently manifest.
It follows from all the foregoing, then, that the decree of the district chancery court must be reversed, and a decree entered in this court, dismissing the complainant’s bill of complaint.